IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ANIMAL LEGAL DEFENSE FUND, et al.**,

        Plaintiffs,

v.

**UNITED STATES OF AMERICA, et al.**,

        Defendants.

**Case No. 6:18-cv-01860-MC**

**OPINION AND ORDER**

**MCSHANE, Judge:**

      Plaintiffs are two nonprofit organizations and six individuals who claim that climate change—and the government's failure to protect them from the effects of climate change—has violated their constitutional right to a safe and sustainable environment. *See* Pl.'s First Am. Compl. for Declaratory and Inj. Relief 2 and 6, ECF No. 28 ("FAC"). Plaintiffs urge this Court to engage in "nothing short of revolutionary thinking" by recognizing "a right to wilderness" under the First, Fifth, Ninth, and Fourteenth Amendments. Pl.'s Resp. 2 and 58–71, ECF No. 72. Plaintiffs further ask that the Court order government actors to adopt certain policies in order to combat climate change. FAC 71–73.

Defendants are the United States of America, as well as several federal agencies and their respective administrators, who move to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defs.' Mot. i, ECF No. 66.[1] Defendants urge the Court to restrain itself from dictating environmental policy by creating a "right to wilderness" and argue that Plaintiffs lack standing to bring such broad claims. *Id.* at 7–43. In the alternative, Defendants move the Court to stay this case pending the Ninth Circuit's resolution of the pending appeal in *Juliana v. United States*, No. 6:15-cv-1517-AA, 2018 WL 6303774 (D. Or. Nov. 21, 2018), *appeal docketed,* No. 18-36082 (9th Cir. Dec. 27, 2018). *Id.* at 43–45.

Because the harm Plaintiffs seek to redress is a diffuse, global phenomenon that affects every citizen of the world, Plaintiffs' harm is not individualized and they lack standing. Additionally, the lower courts—bound by rule of law—are not the forum for the "revolutionary" thinking that Plaintiffs articulately espouse in their briefing. Indeed, this Court has previously declined invitations to create new fundamental rights that are not enumerated in the constitution or found in Supreme Court precedent. *See, e.g.*, *Geiger v. Kitzhaber*, 994 F.Supp.2d 1128, 1140–41 (D. Or. May 19, 2014) (declining to recognize a fundamental right to same sex marriage, instead ruling on equal protection grounds). I continue to do so here. Because there exists no clearly established "right to wilderness," Plaintiffs have failed to state a claim upon which relief can be granted.

Because Plaintiffs lack standing and fail to state a claim, Defendants' Motion to Dismiss, ECF No. 66, is GRANTED.

---

[1] This Court cites Defendants' Motion and Memorandum collectively as "Defs.' Mot."

## BACKGROUND

Plaintiffs' claims arise from their "fear for their own and others' physical and mental wellbeing as a result of climate change-related impacts on federally-owned and managed public lands." *Id.* at 4–5. According to Plaintiffs, climate change is causing "increased frequency and severity of rockslides, avalanches, flash flooding, and wildfires, as well as reduction in stream water flow, snow pack, and native edible plants." FAC 5. Plaintiffs allege that, because of "national policies that promote, subsidize, and develop carbon-intensive industries" and "increase population and consumption," the government is primarily responsible for exposing them to dangerous conditions on federal lands resulting from climate change. *Id.* Plaintiffs also argue that the government's failure to act has and will continue to cause them grave injury. *Id.* at 6. Plaintiffs ask this Court to, among other things, direct the government to "phase out fossil fuel extraction, animal agriculture, and commercial logging of old-growth forests on federal lands," consider impacts on wilderness in making family planning policy decisions, declare Executive Order 13783 unconstitutional, and appoint a special master to review and designate wilderness areas. FAC 71–73.

## STANDARDS

### I. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of a federal court. A federal court has no jurisdiction to resolve any claim for which a plaintiff lacks standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At minimum, standing requires a plaintiff to show she has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the

defendant, and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

## II. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendants move to dismiss Plaintiffs' action for lack of jurisdiction and failure to state a claim upon which relief can be granted. Defs.' Mot. i; *see* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6). Because Plaintiffs must first establish constitutional standing before this Court may entertain the merits of their claims, I address that issue first.

## I. Subject Matter Jurisdiction

Defendants argue that this Court lacks jurisdiction over this action because Plaintiffs lack standing and fail to assert a cognizable case or controversy. Defs.' Mot. 7.

## A. Standing

Under Article III of the U.S. Constitution, the "judicial [p]ower" of federal courts is restricted to "[c]ases" and "[c]ontroversies." U.S. Const. art. III, §§ 1–2. One component of this constitutional limitation is that a federal court may not "decide the merits of [a] dispute" unless the plaintiff demonstrates that she has standing. *Warth*, 422 U.S. at 498. To establish standing, a plaintiff must show that (1) he or she has suffered an "injury-in-fact;" (2) the injury is "fairly traceable" to the defendant's challenged action; and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citations omitted). As relevant here, an injury-in-fact is one which stems from "an invasion of a legally protected interest" which is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," and not a "generalized grievance." *Id.* at 560, 575 (citations omitted). An invaded interest is particularized when the injury affects the plaintiff in a personal and individual way. *Id.* at 560 n.1. Standing "may not be predicated upon an interest of the kind … which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974). In essence,

> [A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lujan*, 504 U.S. at 573–74.

Plaintiffs here allege that climate change has caused them "aesthetic and recreational harm" and prevented them from "seeking the communion with nature they desire." FAC 7–8. They allege that "climate change threatens [the Native people of North America's] culture and tradition like no other previous threat." *Id.* at 10. They allege that climate instability and increased frequency and severity of wildfires interfere with their "constitutional right to find solitude" and "sacred time" in the wilderness. *Id.* at 12, 15. They further argue that "wilderness health and availability are critical to an innate human need to understand and associate with nature." *Id.* at 12. They argue that climate change "threatens to destroy the global environment" and the "health, longevity, livelihood, recreation, cleanliness, and happiness" of its citizens. *Id.* at 6. They also warn that the Earth could suffer permanent ecosystem loss. *Id.* at 24.

This Court acknowledges the "serious" and "well recognized" harms associated with climate change. *See Massachusetts v. EPA*, 549 U.S. 497, 521 (2007). However, Plaintiffs' allegations are, by their very nature, generalized grievances. They allege harm resulting from the government's actions and inaction regarding climate change and seek broad declaratory and injunctive relief that would no more directly or tangibly benefit them than the public at large. *See Lujan* at 573–74. Even if this Court were to recognize a fundamental "right to wilderness," it would necessarily be a right held in common by all citizens, and the effects of climate change would be an abstract injury that all citizens share. *See Schlesinger*, 418 U.S. at 220. For these reasons, Plaintiffs' allegations regarding how climate change affects them are not particularized. *See* FAC 7–19.

Because Plaintiffs fail to allege a particularized injury, this Court does not reach Defendants' traceability, redressability, or associational standing arguments.

**B. Case or Controversy**

For many of the same reasons that Plaintiffs lack standing, this action is not a case or controversy under Article III. The case or controversy restriction limits the federal courts to answering questions "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Massachusetts*, 549 U.S. at 516 (citation omitted). There is no justiciable "controversy" when parties "seek adjudication of a political question," "ask for an advisory opinion," or raise a question that "has been mooted by subsequent developments." *Id.* (internal citations omitted). "The province of the court … is, solely, to decide on the rights of individuals." *Lujan*, 504 U.S. at 576 (citing *Marbury v. Madison,* 5 U.S. 137, 170 (1803)). "Vindicating the *public* interest (including the public interest in [g]overnment observance of the Constitution and laws) is the function of Congress and the Chief Executive." *Id.* at 576.

Defendants rightfully argue that this Court lacks the power to "review and assess the entirety of Congress's and the Executive Branch's programs and regulatory decisions" regarding various subjects "in the aggregate." Defs.' Br. 21–23. It is not the province of the judiciary to make the policy decisions required to grant Plaintiffs the relief they seek. Nor may this Court direct other branches of government to overhaul their fossil fuel, agriculture, logging, and family planning policies to address climate change. To suggest otherwise is to overlook "the separate and distinct constitutional role" of the judiciary. *See Lujan*, 540 U.S. at 576.

For the above reasons, this Court lacks jurisdiction over this action.

## II. Failure to State a Claim

Plaintiffs also fail to state a claim upon which relief can be granted. The Supreme Court has held that the Due Process clause of the Fifth Amendment to the U.S. Constitution affords certain fundamental rights, including the right to marry, have children, direct one's children's education and upbringing, marital privacy, use contraception, bodily integrity, and abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). The Court has cautioned, however, against "expanding the concept of substantive due process" because guideposts for doing so are "scarce and open-ended." *Id.* (citing *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). The doctrine of judicial self-restraint requires the "the utmost care" in breaking new ground in this area. *Collins*, 503 U.S. at 125. The two touchstones of fundamental rights are that they are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 720–21 (citations omitted). A plaintiff must provide a "careful description" of the fundamental right asserted, guided by this "Nation's history, legal traditions, and practices." *Id.* at 721 (citations omitted).

Plaintiffs assert, among other things, a fundamental "right to wilderness" premised on social contract theory and the rights of liberty, privacy, and autonomy, which they argue equate to a fundamental "right to be let alone." *See* FAC 22, 58–67. Plaintiffs argue that a "state of nature," or wilderness, must exist for citizens to meaningfully consent to the social contract. *Id.* at 58, 60, 64. Plaintiffs also assert a Ninth Amendment right to self-determination and argue that the First Amendment affords them "the freedom to choose not to associate by seeking solitude in wilderness." *Id.* at 68–71, 59.

Plaintiffs cite no legal authority to support their theory that there is a substantive due process right to be free from government. To the contrary, "[t]here is no recognized fundamental right to live free of governmental regulation." *Keller v. Los Osos Cmty. Servs. Dist.*, 39 F. App'x 581, 583 (9th Cir. 2002). Even where there is a fundamental liberty interest at stake, the government may infringe upon it if "the infringement is narrowly tailored to serve a compelling state interest." *See Glucksberg*, 521 U.S. at 721 (citation omitted). Further, Plaintiffs' asserted fundamental "right to wilderness" lacks foundation in this "Nation's history, legal traditions, and practices" and is unlike other fundamental rights the Supreme Court has enumerated. *See Glucksberg*, 521 U.S. at 720–21 (citing fundamental rights relating to family and bodily autonomy). Plaintiffs also fail to provide a "careful description" of the asserted right. *See id.* at 721. Instead, they endorse a broad philosophical concept with no legal definition or tangible scope. As Defendants note, courts have consistently held that there is no fundamental right to a particular type of environment or environmental conditions.[2] Defs.' Mot. 30–31.

Finally, Plaintiffs cite *Juliana v. United States* for the proposition that there exists a "right to 'a climate system capable of sustaining human life' as a necessary condition to exercising other rights to life, liberty, and property" and the government has a "continued affirmative duty to safeguard public trust assets, or the literal 'state of nature.'" FAC 59, 63–64 (citing 217 F.

---

[2] *See, e.g.*, *Del. Riverkeeper Network v. Fed. Energy Regulatory Comm'n*, 895 F.3d 102, 108 (D.C. Cir. 2018); *Nat'l Sea Clammers Ass'n v. City of N.Y.*, 616 F.2d 1222, 1237–38 (3d Cir. 1980), *vacated on other grounds sub nom.*, *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *Concerned Citizens of Neb. v. U.S. Nuclear Regulatory Comm'n*, 970 F.2d 421, 426–27 (8th Cir. 1992); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971); *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 250–51 (E.D. Pa. 2019); *Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *3–4 (E.D. Mich. Feb. 28, 2017); *SF Chapter of A. Philip Randolph Inst. v. EPA*, No. 07-4936, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008); *In re Agent Orange Prod. Liab. Litig.*, 475 F. Supp. 928, 934 (E.D.N.Y. 1979); *Pinkney v. Ohio Envtl. Prot. Agency*, 375 F. Supp. 305, 310 (N.D. Ohio 1974); *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 537 (S.D. Tex. 1972); *Fed. Emp. for Non-Smokers' Rights v. United States*, 446 F. Supp. 181, 185 (D.D.C. 1978), *aff'd*, 598 F.2d 310 (D.C. Cir. 1979).

Supp. 3d 1224, 1250, 1260–61 (D. Or. 2016)). The *Juliana* court, however, noted that plaintiffs did not object to the government's role in just *any* pollution or climate change, but rather *catastrophic* levels of pollution or climate change. *Id.* at 1250. The court specifically held that:

> [W]here a complaint alleges governmental action is affirmatively and substantially damaging the climate system in a way that will cause human deaths, shorten human lifespans, result in widespread damage to property, threaten human food sources, and dramatically alter the planet's ecosystem, it states a claim for a due process violation.

*Id.* Plaintiffs here allege nothing of the sort. Moreover, the right to a "stable climate system" is narrower than the "right to wilderness" Plaintiffs advocate for, as evidenced by the sweeping relief they request. *See* FAC 71–73.

Because there exists no clearly established "right to wilderness," Plaintiffs have failed to state a claim upon which relief can be granted. This Court, therefore, does not reach Defendants' remaining arguments.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 66, is GRANTED and Plaintiffs' claims are DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this  31st day of July, 2019.

        s/Michael J. McShane_____
                  **Michael J. McShane**
                **United States District Judge**